**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NATHAN MCCOY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MINERVA NEUROSCIENCES, INC. and REMY LUTHRINGER, <br><br> Defendants. | Case No.: 1:20-cv-12176-GAO <br><br> <u>CLASS ACTION</u> |
| YUTING AO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MINERVA NEUROSCIENCES, INC. and REMY LUTHRINGER, <br><br> Defendants. | Case No.: 1:21-cv-10051-GAO <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF ROBERT AND HEATHER WHITMORE'S MOTION FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND <u>APPROVAL OF SELECTION OF COUNSEL</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

PROCEDURAL HISTORY ............................................................................................. 2

STATEMENT OF FACTS .............................................................................................. 3

ARGUMENT ................................................................................................................... 5

    A.    Consolidation of the Related Actions is Appropriate ...................................... 5

    B.    Appointing Movants as Co-Lead Plaintiffs Is Appropriate ............................ 7

        1.    The Procedure Required By the PSLRA ................................................. 7

        2.    Movants Satisfy the Lead Plaintiff Requirements of the PSLRA ........... 8

            a.    Movants Have the Largest Financial Interest in the Relief Sought by the Class .................................................................................................. 9

            b.    Movants Otherwise Satisfies Rule 23 ............................................. 10

               i.    Movants Satisfy the Typicality Requirement .......................... 11

               ii.    Movants Fulfill the Adequacy Requirement ........................... 12

    C.    Approving Co-Lead Plaintiffs' Choice of Counsel Is Appropriate ............. 13

CONCLUSION .............................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**

*In re Bank of Boston Corp. Sec. Litig.*,
762 F. Supp. 1525 (D. Mass. 1991) ....................................................................... 11

*City of Bristol Pension Fund v. Vertex Pharms.*,
2012 U.S. Dist. LEXIS 180974 (D. Mass. Dec. 21, 2012)....................................... 10

*Daniels Family 2001 v. Las Vegas Sands Corp.,*
2021 U.S. Dist. LEXIS 974 (D. Nev. Jan. 5, 2021)................................................. 14

*Deinnocentis v. Dropbox, Inc.,*
2020 U.S.  Dist. LEXIS 8680 (N.D. Cal. Jan. 16, 2020) ......................................... 14

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................................................. 9

*Fields v. Wolfson*,
41 F.R.D. 329 (S.D.N.Y. 1967) ................................................................................. 6

*Garber v. Randell*,
477 F.2d 711 (2d Cir. 1973)....................................................................................... 6

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982).................................................................................................. 11

*Gilliam v. Fidelity Mgmt. & Research Co.*,
Case No. 04-11600NG, 2005 U.S. Dist. LEXIS 10478 (D. Mass. May 3, 2005) .................... 6

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996).......................................................................... 7, 10

*Howard Gunty Profit Sharing Plan v. CareMatrix Corp.,*
354 F. Supp. 2d 18 (D. Mass. 2000) ......................................................................... 6

*In re Lernout & Hauspie Sec. Litig.*,
138 F. Supp. 2d 39 (D. Mass. 2001) ............................................................. 9, 10, 11

*Lowinger v. Global Cash Access Holdings, Inc.*,
Case No. 08 cv 3516 (SWK), 2008 U.S. Dist. LEXIS 49169 (S.D.N.Y. June 26, 2008) ........ 6

*In re Milestone Scientific Sec. Litig.*,
183 F.R.D. 404 (D.N.J. 1998) .................................................................................. 12

*Nickerson v. American Electric Power Company, Inc., et al.,*
No. 2:20-cv-04243-SDM-EPD (S.D. Ohio Nov. 24, 2020)................................... 14

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988) ................................................................................ 11

*Seguro v. Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.*,
   878 F.2d 5 (1st Cir. 1989) ........................................................................................... 6

*Tehrani v. Biogen, Inc.*,
   2015 U.S. Dist. LEXIS 156001 (D. Mass. Nov. 18, 2015) ........................................ 12

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................................... 10

*White Pine Invs. v. CVR Ref.,*
   2021 U.S. Dist. LEXIS 1199 (S.D.N.Y. Jan. 5, 2021) .............................................. 14

Statutes

15 U.S.C. § 78u-4 ............................................................................................................ passim

 **Rules**

Fed. R. Civ. P. 23 ............................................................................................................ passim

Fed. R. Civ. P. 42(a) ............................................................................................................ 5

Movants Robert and Heather Whitmore ("Movants"), a married couple, respectfully submit this Memorandum of Law in support of their motion for: (1) consolidation of the above-captioned related actions (the "Actions"); (2) appointment as Co-Lead Plaintiffs in the Actions pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); and (3) approval of their selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel.

## **INTRODUCTION**

Presently pending before the Court are two securities class action lawsuits[1] brought on behalf of all persons or entities that (1) purchased Minerva Neurosciences, Inc. ("Minerva" or the "Company") securities between May 15, 2017 and November 30, 2020, inclusive (the "Class Period"). Plaintiff alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5, against Defendants Minerva and Remy Luthringer ("Luthringer") (collectively, "Defendants").

The PSLRA directs the Court to appoint as Lead Plaintiff the movant or group of movants who have demonstrated the "largest financial interest in the litigation" and also meets the typicality and adequacy prongs of Fed. R. Civ. P. 23 ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Movant satisfies both requirements.

*First*, Movants have sustained losses totaling approximately $285,263.95. Accordingly, Movants have a substantial economic interest in directing the litigation and recovering the losses they and the Class have suffered. Movants' losses are, to the best of their knowledge, the largest among purported Class members seeking appointment as Lead Plaintiff. Movants are unaware of

---

[1] The Actions are entitled *McCoy v. Minerva Neorosciences, Inc., et al.* No. 1:20-cv-12176-GAO (D. Mass) (the "*McCoy* Action"), and *Ao v. Minerva Neurosciences, Inc, et al.* No. 1:21-cv-10051-GOA (D. Mass) (the "*Ao* Action").

any other class members who have filed an application for appointment as Lead Plaintiff who have sustained greater losses.[2]

*Second*, Movants meet the typicality and adequacy requirements of Rule 23 because their claims are typical of those of absent Class members and because Movants will fairly and adequately represent the interests of the Class. In addition to demonstrating the largest financial interest in the outcome of the litigation, Movants understand the commitments required of a lead plaintiff and have confirmed that they are ready, willing, and able to oversee the vigorous prosecution of these Actions.

Pursuant to the PSLRA, the Lead Plaintiff selects his choice of counsel, subject to Court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). Movants have selected the law firm of Levi & Korsinsky as Lead Counsel. Levi & Korsinsky has extensive experience successfully litigating securities class actions such as this and possess the resources necessary to vigorously pursue this litigation on behalf of the putative Class.

For the reasons summarized herein and discussed more fully below, Movants' motion should be granted in its entirety.

## PROCEDURAL HISTORY

The *McCoy* Action was filed on December 8, 2020 and the *Ao* Action was filed on January 11, 2021, both in the United States District Court for the District of Massachusetts. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), notice that a class action had been initiated against Defendants was published by counsel in the *McCoy* Action on December 8, 2020 on *Globe Newswire*, a widely

---

[2] The losses suffered by Movants are not the same as their legally compensable damages. Measuring the latter is often a complex exercise and is premature at this stage of the litigation. The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(B) and based upon reference to information concerning the current market for the Company's securities. Movants' transactions in Minerva securities are set forth in the Certifications attached as Exhibit A to the Declaration of Shannon L. Hopkins in Support of this Motion ("Hopkins Decl.").

circulated national business-oriented wire service (the "Notice"). The Notice advised members of the proposed Class of their right to move the Court for appointment as Lead Plaintiff. *See* Hopkins Decl. Ex. C. Movants are members of the proposed Class (*see* Hopkins Decl. Ex. A) and are filing their motion within the sixty-day period following publication of the notice pursuant to Section 21D of the PSLRA.

**STATEMENT OF FACTS**[3]

Minerva is a clinical-stage biopharmaceutical company focused on the development and commercialization of pharmaceuticals to treat patients suffering from central nervous diseases. ¶ 2. Minerva is headquartered in Waltham, Massachusetts and its common stock trades on the NASDAQ exchange under the ticker symbol "NERV." *Id*.

The Company's lead product candidate is roluperidone (also known as MIN-101). *Id*. Roluperidone, or MIN-101, is in development for the treatment of negative symptoms in patients with schizophrenia. ¶ 3. In October 2016, the Company had previously reported positive results from a Phase 2b trial of roluperidone for this treatment, asserting that the "[d]ata show continuous improvement in negative symptoms, stable positive symptoms and extended safety profile." *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business. ¶ 11. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the truth about the feedback received from the FDA concerning the "end-of-Phase 2" meeting; (ii) the Phase 2b study did not use the commercial formulation of roluperidone and was conducted solely outside of the United States; (iii) the failure of the Phase 3 study to meet its primary and key secondary endpoints rendered that study incapable

---

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*McCoy* Complaint") filed in the *McCoy* Action. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *McCoy* Complaint. The facts set forth in the *McCoy* Complaint are incorporated herein by reference.

3

of supporting substantial evidence of effectiveness; (iv) the Company's plan to use the combination of the Phase 2b and Phase 3 studies would be "highly unlikely" to support the submission of an NDA; (v) reliance on these two trials in the submission of an NDA would lead to "substantial review issues" because the trials were inadequate and not well-controlled; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times. *Id*.

On May 15, 2017, Minerva announced via press release that it would proceed to a Phase 3 clinical trial for MIN-101 following a successful "end-of-Phase 2" meeting with the FDA. ¶ 4. In this press release, Defendant Luthringer was quoted as saying that "[o]ur discussion with the [FDA] has helped to confirm our Phase 3 trial design, which is similar to our previous Phase 2b trial design. *Id*. We believe that positive data from the Phase 3 trial, along with the positive data from the Phase 2b trial, may form the basis for the future submission of a New Drug Application for [roluperidone] with the FDA." *Id*.

On May 29, 2020, Minerva released the results of its Phase 3 clinical trial. ¶ 6. The Company announced that the studied "doses were not statistically significantly different from placebo at Week 12 on the primary endpoint . . . or the key secondary endpoint." *Id*. In response to this news, the Company's stock price fell from a May 28, 2020 closing price of $13.47 per share to a May 29, 2020 closing price of just $3.71 per share. ¶ 7.

On a November 2, 2020 earnings call, Defendant Luthringer, in discussing an upcoming November 10, 2020 meeting with the FDA to discuss whether the Phase 2b study combined with the data from the Phase 3 study could form the basis of an NDA, said: "with all the data we have generated and we put in the briefing book, we are extremely confident that the FDA will

understand that we have really very compelling data as you already have seen, when you combine the 2 studies, Phase IIb and Phase III. . ." ¶ 8.

Then, before the markets opened on December 1, 2020, Minerva issued a press release revealing that it had "received official meeting minutes from the November 10, 2020 Type C meeting with the" FDA. ¶ 9. Minerva disclosed for the first time that the "FDA advised that the Phase 2b study is problematic because it did not use the commercial formulation of roluperidone and was conducted solely outside of the United States. *Id*. Furthermore, the FDA commented that the Phase 3 study does not appear to be capable of supporting substantial evidence of effectiveness . . . ." *Id*. Indeed, the "FDA cautioned that an NDA submission based on the current data from the Phase 2b and Phase 3 studies *would be highly unlikely to be filed* and that at a minimum, there would be substantial review issues due to the lack of two adequate and well-controlled trials to support efficacy claims for this indication." *Id.*

On this news, Minerva's stock price plummeted 25.7% in one trading day, to close on December 1, 2020 at $2.89 per share from its November 30, 2020 closing price of $3.89 per share. ¶ 10.

## ARGUMENT

### A.    Consolidation of the Related Actions is Appropriate

Rule 42(a) of the Federal Rules of Civil Procedure provides, in relevant part, that:

If actions before the court involve a common question of law or fact, the court
may:

  1) join for hearing or trial any or all matters at issue in the actions;
  2) consolidate the actions; or
  3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42 (a). Consolidation pursuant to Fed. R. Civ. P. 42(a) is proper where, as here, the Actions involve common questions of law and fact and consolidation would avoid unnecessary

5

delay. *See Gilliam v. Fidelity Mgmt. & Research Co.*, 2005 U.S. Dist. LEXIS 10478, at *4 (D. Mass. May 3, 2005) (citing *Seguro v. Servicio de Salud De Puerto Rico v. McAuto Sys. Group, Inc.*, 878 F.2d 5, 8 (1st Cir. 1989)).

While consolidation falls within this Court's discretion, consolidation here will not only conserve judicial resources, it will also benefit all parties in the various Actions. Courts have recognized that class action shareholder suits like the related Actions here are particularly suited to consolidation pursuant to Fed. R. Civ. P. 42 because their consolidation expedites pretrial proceedings, reduces case duplication, avoids the harassment of parties and witnesses from inquiries in multiple proceedings and minimizes the expenditure of time and money by all persons concerned. *See Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973); *see also Howard Gunty Profit Sharing Plan v. CareMatrix Corp.,* 354 F. Supp. 2d 18, 22 (D. Mass. 2000) (consolidation appropriate where "[t]he Complaints [] involve common questions of law or fact.); *Lowinger v. Global Cash Access Holdings, Inc.*, 2008 U.S. Dist. LEXIS 49169, at *2-6 (S.D.N.Y. June 26, 2008) ("consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports."). Consolidating shareholder class actions like the related Actions not only simplifies pretrial discovery motions, class action issues and clerical and administrative duties, but also reduces the confusion that may result from prosecuting related class actions separately. *Id*.

Moreover, consolidating the related Actions also "would serve the purpose of avoiding needless duplication of time, effort and expense on the time, effort and expense on the part of the parties and the court in the conduct of pretrial discovery proceedings and of the trial itself." *Fields v. Wolfson*, 41 F.R.D. 329, 330 (S.D.N.Y. 1967). It would also enable the proceedings to be

6

expedited and make for economy and convenience generally in the administration of the litigation. In fact, "serious prejudice could result to the parties from a failure to consolidate." *Id*.

Here, there is no doubt that common questions of fact and law exist between the related Actions. The Actions are class actions brought pursuant to the Exchange Act on behalf of the public shareholders of Minerva that seek to recover losses sustained as a result of Defendants' alleged materially false and misleading statements. Therefore, common issues of fact and law predominate and the requirements for consolidation pursuant to Fed. R. Civ. P. 42(a) are satisfied.

### B.      Appointing Movants as Co-Lead Plaintiffs Is Appropriate

#### 1.   The Procedure Required By the PSLRA

The PSLRA has established a procedure governing the appointment of a lead plaintiff "in each private action arising under . . . [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1), (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within twenty days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4 (a)(3)(A)(i). Here, the Notice was published on *Globe Newswire* on December 8, 2020. [4] Hopkins Decl. at Ex. C. Within sixty days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4 (a)(3)(A)-(B).

*Second*, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable

---

[4] The statute requires that notice be published "in a widely circulated business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996).

of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a)(3)(B)(iii). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As discussed below, Movants have complied with the procedural prerequisites of the PSLRA, and have what is, to the best of their knowledge, the largest financial interest in the litigation of any other class member(s) seeking appointment as Lead Plaintiff. Movants are also unaware of any unique defenses that Defendants could raise against them. Therefore, Movants are entitled to the presumption that they are the most adequate plaintiffs to represent the Class and, as a result, should be appointed Co-Lead Plaintiffs in the Actions.

### 2. <u>Movants Satisfy the Lead Plaintiff Requirements of the PSLRA</u>

Movants timely moved this Court to be appointed Lead Plaintiff on behalf of all members of the Class. Movants submitted signed certifications stating that they reviewed the Complaint and are willing to serve as a representative on behalf of the putative Class, pursuant to 15 U.S.C. § 78u-4(a)(2). *See* Hopkins Decl. at Ex. A. In addition, Movants have selected and retained

8

experienced and competent counsel to represent them and the putative Class. *See* Hopkins Decl. Ex. D (Firm Résumé of Levi & Korsinsky).

Accordingly, Movants satisfy the requirements of 15 U.S.C. §78u-4(a)(3)(B) and are entitled to have their application for appointment as Co-Lead Plaintiffs and selection of Counsel, as set forth herein, considered and approved by the Court.

### a. <u>Movants Have the Largest Financial Interest in the Relief Sought by the Class</u>

The Court is to presume that the most adequate plaintiff is the movant with "the largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). *See also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) (courts should presume that "the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff") (quoting H.R. Conf. Rep. No. 104-369, at 33-34 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731)).

Under the PSLRA, damages are calculated based on: (i) the difference between the purchase price paid for the units and the average trading price of the units during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the units and the average trading price of the units between the date when the misstatement was corrected and the date on which the plaintiff sold its units, if it sold its units before the end of the 90-day period. 15 U.S.C. §78u-4(c).

As evidenced by the accompanying Loss Charts, (Hopkins Decl. at B), Movants collectively suffered an approximate loss of $285,263.95 when excluding losses not incurred pursuant to the drops alleged in the Complaint. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005). Movants have a significant financial interest in this case and are unaware of any other applicant for lead plaintiff that has sustained greater financial losses in connection with transactions in Minerva

9

securities during the Class Period. Therefore, Movants have the "largest financial interest in the relief sought by the class," satisfying the first PSLRA prerequisite for appointment as lead plaintiff and, as further demonstrated *infra*, should be appointed as Co-Lead Plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii). *Lernout*, 138 F. Supp. 2d at 43; *Greebel*, 939 F. Supp. at 59 ("the statute erects a rebuttable presumption that the most capable plaintiff is the person with the largest financial interest in the relief sought by the class, [who] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure") (internal quotation omitted).

### b.  Movants Otherwise Satisfies Rule 23

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See City of Bristol Pension Fund v. Vertex Pharms.*, 2012 U.S. Dist. LEXIS 180974, at *10 (D. Mass. Dec. 21, 2012) ("In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff. These findings need only be preliminary.") (citing *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009)).

As detailed below, Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Co-Lead Plaintiffs.

### i.    Movants Satisfy the Typicality Requirement

Typicality under Rule 23(a)(3) requires that the lead plaintiff's claim be aligned with the claims of absent class members and is demonstrated by a showing that the movant's claims are based on the same legal theories as the claims of the putative class. *Lernout*, 138 F. Supp. 2d at 46 ("The plaintiffs' burden in proving typicality requires that the named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class.") (citing *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)). To meet this burden, Movants need not show that their claims are identical to absent class members' claims. *Id*. ("Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.") (citing *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988)). It is enough if their situation shares common issues of law or fact. *See Lernout*, 138 F. Supp. 2d at 45.[5]

Movants satisfy the typicality requirement of Rule 23 because, just like all other class members, Movants: (1) transacted in Minerva securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. Thus, Movants' claims are typical, if not identical, to those of other members of the proposed class since all the claims arise out of the same course of events and are based on the same legal and remedial theories. Additionally, Movants are

---

[5] Although not relevant to the instant motion, a finding of typicality frequently supports a finding of commonality. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158, n. 13 (1982) (noting that the typicality and commonality requirements tend to merge).

11

not subject to any unique defenses, and there is no evidence of any conflicts between Movants and the other members of the Class.

Movants therefore satisfy the required *prima facie* showing of the typicality requirements of Rule 23 for purposes of this Motion.

### ii.     Movants Fulfill the Adequacy Requirement

Movants are also adequate representatives for the Class. A representative party is adequate under Rule 23(a)(4) if: (1) the party's counsel is qualified, experienced and generally able to conduct the proposed litigation and (2) the party does not have interests antagonistic to those of the class. *Tehrani v. Biogen, Inc.*, 2015 U.S. Dist. LEXIS 156001, at *9 (D. Mass. Nov. 18, 2015) ("Plaintiff also, as a preliminary matter, appears capable of adequately protecting the interests of the class, in that plaintiff possesses common interests and an absence of conflict with the class members and plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation.") (internal quotations omitted).

Movants will more than adequately represent the interests of the putative Class. Not only is there no evidence of conflict between the interests of Movants and those of the other members of the putative Class, but Movants have a significant and compelling interest in prosecuting the Actions based on the large financial losses they suffered as a result of the wrongful conduct alleged in the Actions. *See In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (Plaintiff's "financial stake in the litigation provides an adequate incentive for [Plaintiff] to vigorously prosecute the action."). Indeed, Movants have already taken significant steps demonstrating that they recognize, and will protect, the interests of the Class including: (1) executing certifications detailing their Class Period transactions and expressing willingness to serve as Class representatives; (2) moving this Court to be appointed Co-Lead Plaintiffs and (3) retaining competent and experienced counsel who, as shown below, will be able to conduct this complex

litigation in a professional manner. Therefore, Movants will prosecute the Actions vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movants have made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movants have sustained the largest amount of losses from Defendants' alleged wrongdoing, they are, therefore, the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead these Actions.

Moreover, Movants, a married couple, both consider themselves to be sophisticated investors with a combined 20 years of investing experience. The couple resides in Powell, Ohio, and each have higher education degrees, with Mr. Whitmore possessing a Master's Degree in Business Administration, and Mrs. Whitmore possessing a Bachelor's in Business Administration. Mr. Whitmore is employed as a SCADA (Supervisory Control and Data Acquisition) Engineer, and Mrs. Whitmore is currently a homemaker. Accordingly, Movants meet the adequacy requirement of Rule 23.

**C.      Approving Co-Lead Plaintiffs' Choice of Counsel Is Appropriate**

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). Here, Movants have selected Levi & Korsinsky as Lead Counsel.

As set forth in the accompanying firm résumé (Hopkins Decl. Ex. D), Levi & Korsinsky is a highly accomplished firm that is currently acting as lead counsel in a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors. *See e.g., Daniels*

13

*Family 2001 v. Las Vegas Sands Corp.,* 2021 U.S. Dist. LEXIS 974, at *8 (D. Nev. Jan. 5, 2021) (appointing Levi & Korsinsky as lead counsel noting the firm's "extensive experience in complex securities class actions"); *White Pine Invs. v. CVR Ref.,* 2021 U.S. Dist. LEXIS 1199, at *10 (S.D.N.Y. Jan. 5, 2021) appointing Levi & Korsinsky noting "the firm has 'extensive experience' in this area of law and is sufficiently qualified to conduct this litigation"; *Deinnocentis v. Dropbox, Inc.,* 2020 U.S. Dist. LEXIS 8680, at *13 (N.D. Cal. Jan. 16, 2020); *Nickerson v. American Electric Power Company, Inc., et al.,* No. 2:20-cv-04243-SDM-EPD, Dkt. No. 16 (S.D. Ohio Nov. 24, 2020). Thus, this Court may be assured that in the event that Movants' Motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court consolidate the Actions, appoint Movants as Co-Lead Plaintiffs in the Actions, and approve Movants' selection of Levi & Korsinsky as Lead Counsel.

Dated: February 8, 2021                 Respectfully submitted,

/s/*Shannon L. Hopkins*
Shannon L. Hopkins (BBO# 657485)
**LEVI & KORSINSKY, LLP**
1111 Summer Street, Suite 403
Stamford, Connecticut 06905
Tel. (203) 992-4523
Fax: (212) 363-7500
shopkins@zlk.com

*Counsel for Movants and Proposed Lead Counsel
for the Class*

14

## CERTIFICATE OF SERVICE

I, Shannon L. Hopkins, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February 8, 2021.

Dated: February 8, 2021                              */s/Shannon L. Hopkins*
                                                    Shannon L. Hopkins