# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATHAN MCCOY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MINERVA NEUROSCIENCES, INC. and REMY LUTHRINGER,<br><br>Defendants. | Civil Action No. 1:20-cv-12176-GAO |
| YUTING AO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MINERVA NEUROSCIENCES, INC. and REMY LUTHRINGER,<br><br>Defendants. | Civil Action No. 1:21-cv-10051-GAO |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF NATHAN MCCOY FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   FACTUAL BACKGROUND.......................................................................................... 2

III.  Argument ....................................................................................................................... 4

I.    The Court Should Consolidate These Actions ............................................................... 4

II.   The Court Should Appoint Mr. McCoy as Lead Plaintiff............................................. 5

A.    The Procedure Required by the PSLRA ....................................................................... 5

B.    Mr. McCoy Has Timely Moved for Lead Plaintiff Appointment ................................ 6

C.    Mr. McCoy Has the Largest Financial Interest in the Relief Sought by the Class ....... 6

D.    Mr. McCoy Otherwise Satisfies Rule 23 ..................................................................... 6

III.  The Court Should Appoint Mr. McCoy's Choice of Counsel ....................................... 8

CONCLUSION................................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

*Carr v. Analogic Corp.*,
No. 18-cv-11301, 2018 WL 4932858 (D. Mass. Oct. 10 2018) ...................................................... 4

*Leech v. Brooks Automation, Inc.*,
No. 06-cv-11068, 2006 WL 3690736 (D. Mass. Dec. 13, 2006).................................................... 8

*Local No. 8 IBEW Ret. Plan v. Vertex Pharm. Inc.*,
52 F. Supp. 3d 337 (D. Mass. 2014) ............................................................................................ 7

*Thieffry v. Synchronoss Tech., Inc.*,
No. 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF No. 21)......................................................... 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................... passim

15 U.S.C. §§ 78(j)(b) and 78(t)...................................................................................................... 1

**Rules**

17 C.F.R. § 240.10b-5.................................................................................................................... 1

Fed. R. Civ. P. 23(a)(4).................................................................................................................. 7

Fed. R. Civ. P. 42(a) ...................................................................................................................... 4

I.    **PRELIMINARY STATEMENT**

Presently before the Court are two securities class actions brought on behalf of purchasers of Minerva Neurosciences, Inc. ("Minerva" or the "Company") common stock between May 15, 2017 and November 30, 2020, inclusive (the "Class Period"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") (15 U.S.C. §§ 78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). These actions name as Defendants Minerva and Rémy Luthringer (Minerva's Chief Executive Officer).

On December 8, 2020, Nathan McCoy filed the first of these two lawsuits. Mr. McCoy now respectfully submits this memorandum of law in support of his motion for consolidation of the above-captioned, related actions, for appointment as Lead Plaintiff pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), and for approval of Mr. McCoy's selection of Block & Leviton LLP as Lead Counsel for the class.

The PSLRA requires the Court to "consider any motion made by a purported class member," and "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Under the PSLRA, the Court should "adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

This motion is made on the grounds that Mr. McCoy is the most adequate plaintiff as defined by the PSLRA because he has timely moved for such appointment, has a substantial

financial interest in the outcome of this litigation, and is a typical and adequate class representative. Mr. McCoy is, therefore, the presumptive Lead Plaintiff. In addition, the Court should approve of Mr. McCoy's selection of Block & Leviton LLP as Lead Counsel because the firm possesses extensive experience prosecuting securities class actions and will adequately represent the interests of all class members. Finally, and prior to the appointment of a lead plaintiff and lead counsel, the Court should consolidate the two above-captioned PSLRA cases.

## II.   FACTUAL BACKGROUND[1]

Minerva purports to be a clinical-stage biopharmaceutical company focused on the development and commercialization of a portfolio of product candidates to treat patients suffering from central nervous diseases. ¶ 2. The Company's lead product candidate is roluperidone, also known as MIN-101. *Id.* MIN-101 is in development for the treatment of negative symptoms in patients with schizophrenia. ¶ 3. In October 2016, Minerva reported positive results from a Phase 2b trial of roluperidone for this treatment, asserting that the "[d]ata show continuous improvement in negative symptoms, stable positive symptoms and extended safety profile." *Id.*

On May 15, 2017, the start of the class period, Minerva announced that it would proceed to a Phase 3 clinical trial for MIN-101 following a successful "end-of-Phase 2" meeting with the FDA. ¶ 4. In this announcement, Defendant Luthringer stated that "[o]ur discussion with the [FDA] has helped to confirm our Phase 3 trial design, which is similar to our previous Phase 2b trial design. We believe that positive data from the Phase 3 trial, along with the positive data from the Phase 2b trial, may form the basis for the future submission of a New Drug Application for [roluperidone] with the FDA." *Id.*

---

[1] The facts are taken from the Complaint filed in the first-filed *McCoy* action, 1:20-cv-12176-GAO, (ECF No. 1). References to "¶" refer to that Complaint.

The FDA, however, did not agree that positive data from the Phase 2b trial could form the basis of a future NDA for MIN-101, or that the Phase 3 trial was a well-designed trial. ¶ 5. On May 29, 2020, Minerva released the results of its Phase 3 clinical trial, announcing that the studied "doses were not statistically significantly different from placebo at Week 12 on the primary endpoint . . . or the key secondary endpoint." ¶ 6. In other words, the Phase 3 clinical trial failed. *Id.* On this news, Minerva's stock price fell from its May 28, 2020 closing price of $13.47 per share to a close of just $3.71 on May 29, 2020. ¶ 7.

Nevertheless, on a November 2, 2020 earnings call, Defendant Luthringer in discussing the Company's upcoming November 10, 2020 meeting with the FDA to discuss whether the Phase 2b study combined with the data from the Phase 3 study could form the basis of an NDA, said: "with all the data we have generated and we put in the briefing book, we are extremely confident that the FDA will understand that we have really very compelling data as you already have seen, when you combine the 2 studies, Phase II and Phase III . . . ." ¶ 8.

On December 1, 2020, before the markets opened, Minerva announced that it had "received official meeting minutes from the November 10, 2020 Type C meeting with the" FDA. ¶ 9. For the first time, Minerva disclosed that the "FDA advised that the Phase 2b study is problematic because it did not use the commercial formulation of roluperidone and was conducted solely outside of the United States. In addition, FDA commented that the Phase 3 study does not appear to be capable of supporting substantial evidence of effectiveness . . . ." *Id.* In addition, the "FDA cautioned that an NDA submission based on the current data form the Phase 2b and Phase 3 studies would be highly unlikely to be filed and that at a minimum, there would be substantial review issues due to the lack of two adequate and well-controlled trials to support efficacy claims for this

3

indication." *Id.* On this news, Minerva's stock price fell from its November 30, 2020 close of $3.89 per share to a December 1, 2020 close of just $2.89 per share. ¶ 10.

These lawsuits allege that Defendants misled investors about: (1) the feedback received from the FDA concerning the "end-of-Phase 2" meeting; (2) that the Phase 2b study did not use the commercial formulation of roluperidone and was conducted solely outside of the United States; (3) that the failure of the Phase 3 study rendered it incapable of supporting substantial evidence of effectiveness; (4) Minerva's plan to use the combination of the Phase 2b and Phase 3 studies would be "highly unlikely" to support the submission of an NDA; and (5) reliance on these two trials in the submission of an NDA would lead to "substantial review issues" because both trials were inadequate and not well-controlled. ¶ 11.

## III.    ARGUMENT

### I.    The Court Should Consolidate These Actions

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

There are currently two related securities class actions against Defendants Minerva and Luthringer pending in this District: *McCoy v. Minerva Neurosciences, Inc., et al.*, 1:20-cv-12176-GAO, and *Ao v. Minerva Neurosciences, Inc., et al.*, No. 11:21-cv-10051-GAO. Consolidation is appropriate where, as here, the actions are pending in the same court and involve common questions of fact or law. *See* Fed. R. Civ. P. 42(a); *see Carr v. Analogic Corp.*, No. 18-cv-11301, 2018 WL 4932858, at *1 (D. Mass. Oct. 10 2018). Moreover, cases should be consolidated where there is "more than one action on behalf of a class asserting substantially the same claim or claims." 15 U.S.C. § 78u-(b)(ii).

These two actions assert the same claims, against the same Defendants, based on the same or similar legal and factual allegations and allege exactly the same Class Period. The Court should therefore consolidate the above-captioned actions and any other subsequently filed or transferred shareholder actions that relate to the claims in this matter.

## II.    The Court Should Appoint Mr. McCoy as Lead Plaintiff.

### A.    The Procedure Required by the PSLRA

The PSLRA established a procedure governing the appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) & (a)(3)(B)(i).

*First*, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice (*i.e.*, today, February 8, 2021), any person who is a member of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) & (B).

*Second*, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the members of the class the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that (aa) has either filed the complaint or made a motion in response to a notice . . . (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

5

### B.    Mr. McCoy Has Timely Moved for Lead Plaintiff Appointment

The statutorily-required notice of the first-filed *McCoy* action was published on December 8, 2020, advising class members of: (1) the pendency of the action; (2) the claims asserted therein; and (3) the right to move the Court to be appointed as lead plaintiff by February 8, 2021. *See* Block Decl., Ex. A.[2]  Pursuant to the provisions of the PSLRA and within the required time frame after publication of the notice, Mr. McCoy timely moves this Court to be appointed as Lead Plaintiff on behalf of all members of the class. Mr. McCoy has signed a certification pursuant to the PLRSA. *See* Block Decl., Ex. B. He has selected and retained qualified counsel to represent him and the proposed class. *See* Block Decl., Ex. E.

### C.    Mr. McCoy Has the Largest Financial Interest in the Relief Sought by the Class

According to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action. During the Class Period, as evidenced by, among other things, Mr. McCoy's accompanying signed certification and loss chart, Mr. McCoy incurred a substantial loss of approximately $30,522.67 on his class period transactions in Minerva securities. *See* Block Decl. Exs. B, C. At the time of this filing, Mr. McCoy believes that he possesses the largest financial interest of any movant seeking lead plaintiff status.

### D.    Mr. McCoy Otherwise Satisfies Rule 23

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u4(a)(3)(B)(iii)(I)(cc). "In deciding a motion to serve as lead plaintiff, a court need only

---

[2] References to the "Block Decl." are to the Declaration of Jeffrey C. Block, filed contemporaneously herewith.

make findings as to the typicality and adequacy of the proposed lead plaintiff. . . . Those findings need only be 'preliminary.'" *Local No. 8 IBEW Ret. Plan v. Vertex Pharm. Inc.*, 52 F. Supp. 3d 337, 341 (D. Mass. 2014) (citation omitted).

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where plaintiff's claims "arise from the same course of events and involve the same legal theory as to the claims of the rest of the class." *Local No. 8*, 52 F. Supp. 3d at 341. Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A plaintiff is "capable of adequately protecting the interests of the class" by "possess[ing] 'common interests and an absence of conflict with the class members[,] and . . . plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation.'" *Local No. 8*, 52 F. Supp. 3d at 341 (citation omitted).

Here, Mr. McCoy's claims are typical because, like all members of the class, he purchased or otherwise acquired Minerva securities during the Class Period at prices artificially inflated by Defendants' wrongful conduct and suffered damages as a result thereof. Mr. McCoy's claims therefore arise from the same course of events as all class members and will require similar (if not identical) legal arguments to prove Defendants' liability.

Mr. McCoy is also an adequate representative for the proposed class. His substantial financial interest in the outcome of the action demonstrates that his interests are aligned with those of the class. In addition, Mr. McCoy has submitted a declaration in which he discusses his background and details his understanding of the responsibilities of a lead plaintiff and his commitment to leading this case. *See* Block Decl., Ex. D. Furthermore, Mr. McCoy has selected highly experienced counsel committed to zealously and efficiently prosecuting these actions to a

successful conclusion. *See* Block Decl., Ex. E. Thus, Mr. McCoy satisfies the adequacy requirements of Rule 23(a)(4).

Because Mr. McCoy is the presumptive "most adequate plaintiff" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), and no competing movant can rebut that presumption, the Court should appoint him Lead Plaintiff.

### III.    The Court Should Appoint Mr. McCoy's Choice of Counsel

Under the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. 15 U.S.C. § 78u-4(a)(3)(B)(v). "'Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.'" *Leech v. Brooks Automation, Inc.*, No. 06-cv-11068, 2006 WL 3690736, at *3 (D. Mass. Dec. 13, 2006). Mr. McCoy has selected Block & Leviton, a firm with substantial experience in the prosecution of shareholder and securities class actions to serve as lead counsel. Block Decl. Ex. E. As recently noted by one district court:

> While I recognize that each counsel is well qualified, I am particularly persuaded by [Block & Leviton's] experience in large securities class actions, such as its representation of plaintiffs in *In re BP Securities Litigation*, (S.D. Tex.), *In re Google Inc. Class C Shareholder Litig.* (Del. Ch. Ct.), and *In re Volkswagen "Clean Diesel" Marketing, Sales and Products Liability Litigation (N.D. Cal.)*. I find the experience garnered from such representations will benefit the shareholder in this suit.

*Thieffry v. Synchronoss Tech., Inc.*, No. 3:17-cv-07173-FLW-LHG (D.N.J. 2018) (ECF No. 21).

Accordingly, the Court should approve Mr. McCoy's selection of Block & Leviton as Lead Counsel.

### CONCLUSION

For the foregoing reasons, Mr. McCoy respectfully requests that the Court: (i) consolidate the other securities fraud class action lawsuit against Minerva filed in this district under the first-

8

filed, lowest-numbered *McCoy* docket; (ii) appoint Mr. McCoy as Lead Plaintiff; (iii) approve of his selection of Block & Leviton LLP as Lead Counsel; and (iv) grant such other relief as the Court may deem just and proper.

Dated: February 8, 2021

Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Jacob A. Walker
Stephen J. Teti
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 (phone)
(617) 507-6020 (fax)
jeff@blockleviton.com
jake@blockleviton.com
steti@blockleviton.com

*Attorneys for Mr. McCoy and*
*Proposed Lead Counsel*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*/s/ Jeffrey C. Block*